The next case is United States v. Landeros-Gonzalez, No. 245010. Mr. Lund, welcome back. Thank you. May it please the Court, my name is William Lund and I represent the appellant Louis David Landeros-Gonzalez. When Congress enacted the Sentencing Reform Act of 1984, it required a judge under 3553A6 to avoid unwarranted sentencing disparities. The movement throughout the country to modify drug possession crimes from felonies to misdemeanors creates perhaps the largest number of persons who are affected by sentencing disparities. Since the time the Sentencing Reform Act was enacted in 1984. The numbers in fact are impressive. There's 22 states in the District of Columbia that have made it so that felonies that once were drug possession felonies are now misdemeanors. And that affects some 46% of the population so in 46% of the country it's a misdemeanor now and in 54% of the country it's a felony still. And even in the 10th Circuit itself, there's four states that have made this misdemeanors and there's two states where it's still felonies. In Oklahoma... Do you think criminal history points that the policy is to calculate them based on what society thinks about a certain type of conduct or is it at least somewhat based on a person's willingness to commit a crime that the government has defined as a felony? Does that make sense to you? I understand what you're saying. I think the answer with regard to the calculation of criminal history points goes to how the state has now dealt with this. In Oklahoma, Governor Stitt in 2019 signed this legislation that made this all retroactive and when you go to 220S19B, prior felony convictions are supposed to now be automatically expunged and under 220S19G they shall be deemed as though they never occurred. Now unfortunately for my client, somehow that didn't get done. But as you'll note in my brief, one local newspaper, the largest one in the state, claims that there are some 60,000 people in Oklahoma that are affected by this legislation. So this is something that's an important issue. Congress set out various things about this unwanted sentencing disparity. Mr. Long, can I just jump in and you just referred to your brief. Am I correct in recommending reading your brief as primarily making a substantive reasonableness argument? No, there's also a procedural element. Well that's what I'm asking. It seems that you started out with this disparity point and I understand that that's a central argument to your appeal. Do you agree that that goes to the substantive reasonableness of the length of the sentence? In other words, you didn't get the variance. Well, I think in this case, frankly, that I felt like after I left the sentencing that I'd just been beating my head against the wall with the district court because I couldn't get the district court to deal with the issue of the substantive reasonableness, with the disparity that was involved here. The district court just simply wanted to cling to the guidelines as though that was all it was going to do. And so I think you have a procedural issue that is derived from the district court's failure to address a valid issue that was presented before it and deal with the unwarranted sentencing disparity that now exists in the state of Oklahoma. Well, but you're not contending that the calculation of the guidelines range was in error then. I mean, doesn't this go more to whether the court should have varied based on the argument you're making just now? Well, there is a case that I've cited in my brief, which is Sabillon-Urbana, where it says it doesn't matter whether or not you've calculated the guidelines supposedly correctly or whether you do it by a variance. If you don't address the issue, then you've committed procedural... Okay, but did you argue procedural error in district court? Is that preserved? Well, I think I did. I obviously was arguing that the court needed to deal with this issue. And the most I ever... Let me ask you this. If we are in the realm of the substantive reasonableness of the district court and the reasonableness of the Senate, 37 months was within the guidelines range under either competing view of the criminal history category that you argue. I mean, 37 was at the bottom of one and at the top of the other. So it seems like you actually did make some headway with the court to pick 37 months based on your disparity argument. So where's the substantive unreasonableness? Well, it's under Rosales-Morales and Molina-Martinez, where the United States Supreme Court has dealt with this issue where you really should be changing the guideline. And you're not just looking at sentences that might fit within a guideline, either of one of two guidelines. You're actually dealing with what is going to be the guideline range that the district court is going to be dealing with. Well, that may be so, but we also have law providing that as long as the sentences are within the guideline range and if it's within both of the competing guideline ranges that have been argued here, it's presumptively reasonable. So why isn't this a presumptively reasonable sentence? Because the district court judge did not consider whether or not the guideline range should be dropped to a level that started some six months lower than the sentencing guideline range that was used by these old calculations that shouldn't have applied to it probably in the first place. I think you knew we were going to ask about this. That's a prong three argument, right, for procedural reasonableness. Yes. Well, as I said, the most... Assuming we're at plain ear. Yes. The most that we got... You've got this situation that arises where you have unwarranted sentencing disparities, and I went back and read the legislative history of the Sentencing Reform Act, and they point out to all of these problems that can arise if you have this kind of situation. Well, the unwarranted... I understand your argument. You presented it extremely well, but on substantive reasonableness, I'll just tell you what my concern is, and then if you talk me out of it, is 3553A6 refers to national disparities. And so you have an internal within Oklahoma disparities, and that can be considered, but I don't think that that is what 3553A6 addresses, and that's a national disparity. So I don't know that your disparity argument fits within 3553A6, but I may be wrong about it. Well, that's why I threw in... That's why I went out and looked at the population of the 22 states that have now changed the law and made it so that felony drug possession crimes are now misdemeanor drug possession crimes. And so that creates a national sentencing disparity issue. And do we know in those 22 states how those defendants have been sentenced? No, I don't know. This is as far as I went with this, but I don't think that it's an improper way in terms of analyzing whether or not there really is a national sentencing disparity issue for people who have similar conduct, similar offenses that are involved. But that ignores the states that didn't change the law, and seemingly, if you're looking at a national disparity, you have to consider all states, even the ones that didn't change the law. Well, if you're an inmate who gets an extra year or two of a sentence because you're in a state where they didn't change the law and they're counting your felony convictions with more points, then that creates the kind of problem that Congress was worried about, which is that it creates unnecessary tension among inmates, disciplinary problems arise. If you're an inmate in a penitentiary and you're spending two years more than the guy in the cell next to you because he was from a state that had a misdemeanor drug possession modification, then that creates problems. But that would seem to counsel against your argument, though. Well, I don't think so. I think the judges in these cases have to take into consideration that there is this unwanted sentencing disparity because it exists for the same conduct. I don't know, pick a, I don't know what state, I don't know which 22 states have done what you're talking about, but let's assume that Alabama has not done that. Probably not. Okay. No offense to Alabama. Right, yeah, no offense to Alabama. But, you know, should the Alabama's district judges have to look at these and say, well, I've got a guy with, who has two felony convictions. But if he were living in Oklahoma, he, these would have been expunged. So by considering the felony convictions in his criminal history, I'm ratcheting up his sentence and it's going to create a disparity because the state of Oklahoma has decided to expunge their convictions for people with felony marijuana possession convictions. The answer is, if I were representing him in Alabama, I would certainly make that argument. And I would point out that there are 22 states nationally, 45% of the population, that have reduced these possession crimes to misdemeanors. And so you're causing this fellow to get a much higher sentence than what all these people in all these other federal courts in these states are getting. Let me just ask you a question about the guideline for criminal history. It provides adding three points for each prior sentence of imprisonment exceeding one year and one month. Aren't criminal history points based on the length of the sentence and not the label that you put on the crime? Well, the answer is they are, except that in Oklahoma, because of these new statutes that Governor Sitt signed, they're not supposed to be anymore. They're supposed to be expunged. We know what the length of the sentence was for your client. You're not supposed to, though, under this law. You're not supposed to know? No. It's supposed to have been expunged. But it wasn't. And so the probation officer should never have been able to get to it. But it wasn't expunged, was it? It wasn't. No. So, but how, well, okay. That's my point. Let me just, I'm still a little troubled on this procedural issue. In looking at the sentencing record, it seems like the judge acknowledged the amendment. It wasn't that the judge ignored the amendment. In fact, indicated some sympathy about it, but talked about the defendant's prior drug offenses, the two illegal reentries, concern about gang involvement and substance abuse, and then picks the 37 months. And not only that, at the end says, and I'm quoting from the record, sentencing disparities among defendants were considered in determining an appropriate sentence in this case. So the judge has made a statement indicating that the court didn't ignore your argument. It just didn't go as far as you wanted it to go. Well, I don't think that the judge did deal with the fact that there were different. But he said he did. I understand. And there is a case, actually, Lente, which says a routine statement that you consider the 3553A factors doesn't work. You must demonstrate that you have done so. And there's nothing in this record where this court says anything about, I really considered this disparity issue. I'd like to reserve that. He says he considered it, but he needed to say, I really considered it. Well, the court has to be convinced that he really considered it. May it please the court. Elliot Anderson for the United States. This case turns on three questions. First, did the district court use the correct sentencing guideline range? Yes, he did. Second, did the court listen to defendant's argument about its sentencing disparity, address it on the merits, and give a reasoned basis for denying the motion for a downward variance? Yes, the court did quite extensively. Third, did the court, in denying the variance and imposing the sentence it did, exceed the bounds of permissible choice or act in an arbitrary or capricious manner? No, the court did not. As to the first question, I'm not sure how much of a question we still have as to whether the guidelines range was correctly calculated. But answering that question speaks to the other issues in this case. 4.1, 4A1.1 says, as the court noted a moment ago, points are awarded based on the length of the sentence imposed, not whether the crime is a felony or a misdemeanor. So in three places, the current guidelines speak to this question that appellant is raising. This is not a novel question. It's been percolating through the courts since California reclassified marijuana offenses in 2014. Could I just ask a quick question on something you just said about it's the length of the sentence under the guideline? You cite a number of cases in your brief on page 11. They're all unpublished. Is there any question about whether this is a settled or unsettled issue in the circuit? The fact that those cases are unpublished, Your Honor, says to me that the issue is not that controversial. Those cases were issued. We do have circuit court authority as well speaking on just overall in the guidelines, whether it's under federal statute, whether it's the mandatory minimum under 841, the Armed Career Criminal Act, the offense 4B1.1 enhancement. We always look at what law did the defendant violate when he committed the crime. That's what the Supreme Court requires in McNeil. That's what this court held in key. It would be nonsensical to evaluate a prior crime in light of what the law looks like now. So the unpublished cases, Your Honor, are the ones, to be honest with you, that speak most directly to this. There are more than the ones I cited. I didn't want to put too many unpublished cases in my brief. But the issue, defendant did not present the court below with one case supporting the idea that a change in a criminal penalty creates an unwarranted sentencing disparity and appellant has not presented one case on appeal for that proposition. The legislature, to the contrary, the legislature can adjust the penalty for a criminal offense. That is its job. It makes that line-drawing exercise. That doesn't mean that we have to pull everyone out of jail who has been sentenced under either that provision or received points for violating that provision elsewhere and resentence them every time a penalty changes. The guidelines provide at 4A1.1 in the background comment that whether an offense is a felony or a misdemeanor, that's an unreliable measure of how serious a crime was. We're looking at what law did the defendant violate when he did it. So that's why we look to the length of the sentence imposed. Scalia. Would it be different if the change legalized the conduct as opposed to reduce the seriousness of the penalty from a felony to a misdemeanor? I argue it would not, Your Honor. We actually cited a case to that effect in our brief. I think it was in the Second Circuit where marijuana possession had been decriminalized completely. That didn't change the fact that the defendant committed a felony when he violated the law. I want to speak briefly to a point the defendant raised in its reply as to this automatic expungement process in Oklahoma at Title 22, Section 19. That expungement mechanism is not even yet in effect. That law took effect in July 1, 2024, and at Title 22, Section 18C, the statute provides that the auto expungement mechanism does not kick in until three years after the effective date. So the expungement process will not even be operating until 2027. In this case, the defendant committed his crimes, the priors that we're concerned with, in 2012 and 2013 and was sentenced in 2023. So the expungement statute has no bearing on this case. The guidelines contemplate at 4A1.3, Comment 3, that a defendant with prior marijuana convictions might argue that his criminal history is overrepresented in his score and could ask for a downward departure. Here, the defendant asked for a downward variance. I think the analysis would be largely the same. And the district court gave ample reasons for denying the variance. So let me speak now to that second procedural error that the appellant is raising. Under RITA, the Supreme Court clarified that the district court does not have to provide a Talmudic level of detail when it rules from the bench on a sentencing motion. The court just needs to put enough in the record to allow a reviewing court to determine, did they hear the argument? Did they consider it? Did they have a reasoned basis for ruling on it? Here, the court did, multiple times. The court entertained defendant's argument. When ruling on the argument, the court spent about three pages of the transcript ruling on the downward departure and downward variance motions. And the court reiterated the argument perfectly. The court said, I understand your arguing. There's an unwarranted disparity here because of the change in Oklahoma law. And then the court gave many reasons for denying the variance. Bear in mind, the court allowed the defendant every opportunity and the court entertained every argument the defendant wanted to make. The court heard argument from counsel. The court heard testimony from the defendant's aunt. The court heard testimony from the defendant himself. And after direct and cross, the court directly questioned the defendant extensively on his history, his activities, his gang involvement. The court noted that the defendant had a pattern of illegal reentry followed by drug offenses over and over again. And the court was in an ideal position to judge the defendant's credibility, having seen him on the stand and spoken to him face to face. The court asked the defendant, how is there a picture of the exact gun you were arrested with on your phone? And the defendant had no answer other than to say, I got that phone about a month ago from some guy at a party. Not everything on that phone is mine. The court asked the defendant, while you were in Mexico, were you involved in gang activity there? The defendant's reply was, there are no gangs in Mexico. Understood. Let me ask you a question about Mr. Lund's argument, however, in connection with what Judge Frizzell, part of what Judge Frizzell explained. And that is, he makes the argument to Judge Frizzell, and then Judge Frizzell says, and I'm not quoting it, it's one habit of another. The guideline range is a floor of 37 months to X. And if I grant the variance, it's X to 37 months. So it really doesn't matter. The common denominator is 37 months, and that is what you're going to get. That is unquestionably incorrect, isn't it? Because under the 3553A, we start with the guideline range. And to say that the common denominator, I'm going to pick a common denominator, and so it doesn't matter. Well, we have when Judge Gorsuch was on our court, we have what the Supreme Court has said, that that is wrong. That just if the guideline range is wrong, that is the starting point. And even if the ultimate sentence falls within the applicable guideline range, that doesn't mean the defendant isn't spending a month more in prison than he otherwise should be. I agree, Your Honor. In this instance, I don't believe the district court was being cavalier or saying that it didn't matter. I don't mean to disperse Judge Frizzell. I'm not saying he was being flipped. He wasn't. But I'm just wondering if he was legally incorrect. He was not. I believe what the transcript says, and it could have been phrased differently, but he said if I calm down what I think would be the appropriate amount on the variance, you're still looking at a maximum of 37 months, right? He was saying that in the context of even if I give you a variance, it's probably going to be 37 months. He ultimately denied the variance. And just to emphasize how seriously Judge Frizzell took this, the docket will reflect this sentencing hearing started at 9.30. At page 47 of the transcript, you see Judge Frizzell apologizing to the other lawyers in the room because this hearing is about to push into lunch. Yeah. And just to make absolutely clear, the question is in no way intended to suggest I didn't imply I think you interpreted it, but I just wanted to make sure Judge Frizzell is an excellent judge. I did not mean to disperse his comment. So I just wanted to make sure you understood. I understand, Your Honor. And given all of that, my interpretation of that comment is not that he's saying it doesn't matter. He's going to consider the motion for variance very thoroughly. As Judge Matheson noted, he gives the defendant some consideration for it. He says, in light of your history, in light of the fact that you would have had only four points on these offenses, except that after you reentered in March of 13, you immediately reoffended with methamphetamine and that got you accelerated on the first one. And that seemed to have particular weight for the judge. In light of all that, I think that comment isn't saying that it doesn't matter what range you're in. That comment is saying, the best I can do for you under the range you're in is still within the range that you want, and so 37 months. But I understand. This goes to appellant's cases Rosales-Morales and Molina-Martinez, which all depend on an error in the guidelines calculation. And here, there was no error, nor is there. You're not arguing that these procedural reasonableness points being raised by the appellant are waived? Or are you? Have you argued that there's a waiver on procedural reasonableness? I wouldn't argue waiver, Your Honor. I definitely would argue that plain error review is applicable here. The defendant did not object to the guidelines calculation. Okay. Forfeiture, then. Are you saying that the arguments were forfeited? Especially given that the second procedural argument was not raised until the reply brief, I think that that's an option here. But did you make the forfeiture or waiver arguments in your brief? Well, I didn't have an opportunity to address the second procedural argument that only came up in the reply. As to the first one, I did argue in my brief that at best, that's plain error review. All right. And you're not arguing, because we have cases that say that if the appellant doesn't argue plain error, then that is waived. You're not arguing that? No, Your Honor. I think under any standard, there was nothing wrong with the sentencing procedure below. It was incredibly thorough. There is no unwarranted disparity here. And I'll point the Court to a case that's not in my brief. Dorsey v. United States at 567 U.S. 260. Justice Breyer writing for the majority there. And it's not exactly on point. They're considering the Fair Sentencing Act and the recalibration of the crack cocaine to powder cocaine ratios. But in that opinion, for the majority, Justice Breyer notes, anytime the legislature changes a penalty and draws a new line, you're going to have a disparity. And then the federal practice in sentencing is whoever comes in front of the Court is under the law at that point in time that applies to them. It's not an unwarranted disparity. I think that Justice Breyer's comments are inconsistent with the idea that we have to go throughout time and space to bring everyone together and treat offenses the way they are treated in Oklahoma or whatever the most liberal, lenient jurisdiction is at this point in time. Basically, what he's arguing for is a one-way ratchet, where because some states treat this as a misdemeanor or not illegal at all, defendants who have deliberately violated a felony statute in other states have to be treated as though they didn't. There's no disparity between someone who commits a felony in Kansas and someone who commits a misdemeanor in California. 3553A6 is looking for similarly situated defendants with similar criminal histories. And an Oklahoma defendant from 2013 who committed a felony, his third criminal offense, and an Oklahoma defendant from 2020 who commits a misdemeanor, his third, do not have the same criminal history. Can I just ask you, because there's some emphasis in the reply brief on this, the 2019 legislation that made the 2017 amendment retroactive, did the district court consider that? I don't believe that was raised to the district court, Your Honor. The 2019 legislation didn't make the 2017 amendment purely retroactive. It allowed a mechanism for particular defendants to seek commutation of their individual sentences. Even in cases where the defendants have done that, and here Mr. Landeros-Gonzalez hasn't, even in McGee, before this court, where the defendant had gone back and sought a reclassification, or in Herrera out of the circuit, that doesn't make a difference under the guidelines, because the guidelines ask, what law did you break? What willingness to commit a crime did you evidence when you broke the law? Just in closing, Your Honor, as this court noted in Verdeen, sorry, Verdeen-Garcia, cited in the opponent's reply, when a defendant brings an argument for a downward departure or a variance, they need to bring a non-frivolous argument and more than just, quote, hand-waving or conclusory statements. Here, the argument that was presented to the district court was not supported by any legal authority, any sentencing data, any other information that would support the argument they were asking for. It simply noted, this used to be a felony and now it's a misdemeanor. The district court did a more than ample job of responding to that argument, of giving a reasoned basis for exercising its discretion. There was no procedural error here. There was no substantive error. The sentence is presumptively reasonable. We ask this court to affirm. Thank you. Thank you, Counselor. Is there any rebuttal? 45 seconds. The problem with the sentencing and the explanation that was given by the judge was that there was no direct discussion of whether or not there was a sentencing disparity. And that's the reason why you have the procedural error here. And the reason that he gives the sentence he does is something that's covered by the guidelines, which is, well, you've committed so many offenses and you've done this so many times. And so what's missing here is the importance of the disparity that exists, certainly in Oklahoma, and it appears in all other states throughout the country. Thank you, Counsel. The case will be submitted. Counsel are now excused.